## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| W.M., et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:21-cv-01266 |
| v. | (SAPORITO, M.J.) |
| SCRANTON SCHOOL DISTRICT, | |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| THE CENTER FOR DISCOVERY, | |
| Third-Party Defendant. | |

## <u>MEMORANDUM</u>

This federal civil rights action commenced when the plaintiffs—W.M. and T.M., minors, and A.T., individually and as parent and guardian of W.M. and T.M., all appearing through counsel—filed their complaint on July 19, 2021. (Doc. 1.) W.M. is a student enrolled in Scranton School District (the "District"), the defendant in this action. A.T. is W.M's parent, and T.M. is W.M.'s younger sibling. In their seven-count complaint, the plaintiffs have asserted claims for damages and injunctive relief against the District arising under 42. U.S.C. § 1983,

Section 504 of the Rehabilitation Act (the "RA"), 29 U.S.C. § 794, Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181 *et seq.*, and the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.*

The District answered the complaint and then filed a third-party complaint against the Center for Discovery (the "Center"), a private special-education school located in Harris, New York. (Doc. 16.) The District subsequently filed an amended third-party complaint against the Center. (Doc. 31.) In its four-count amended third-party complaint, the District has asserted federal damages claims against the Center under the IDEA and the ADA, and state-law damages claims for negligence and common law indemnification.

The Center has moved to dismiss or to strike the amended third-party complaint for lack of jurisdiction, pursuant to Rule 12(b)(2) or Rule 14(a)(4) of the Federal Rules of Civil Procedure, or, in the alternative, to dismiss it for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 34.) The Center's motion is now fully briefed and ripe for decision. (Doc. 37; Doc. 39; Doc. 41.)

## I.   BACKGROUND FACTS

W.M. is a minor and a student enrolled in the District. He has profound disabilities that severely limit his abilities in the areas of intelligence, communication, self-care, gross-motor skills, and fine-motor skills. He is eligible for special education services under the IDA categories of intellectual disabilities, autism, and speech and language impairment.

Prior to the 2019–20 school year, the plaintiffs resided in the State of New York. While residing there, Yonkers Public Schools ("Yonkers") was the local educational agency responsible for providing W.M. with educational services. Pursuant to an agreement between W.M.'s parent and guardian, A.T., and Yonkers, W.M. was placed as a residential student at the Center, a private residential facility and special education school, at a cost of about $33,000 per month.

For the 2019–20 school year, A.T. and T.M. moved and resided within the District, where T.M. was enrolled as a student. Despite this change of residency, however, W.M. remained at the Center, and the District was unaware of his existence.

In July 2020, A.T. attempted to enroll W.M. with the District. Due

to administrative issues, he was not formally enrolled with the District until August 6, 2020. But in mid-July, A.T. informed Yonkers that W.M. had been registered for school in the District. Yonkers immediately terminated funding for W.M.'s placement at the Center.

On July 24, 2020, the Center emailed the District and asked it to continue funding W.M.'s placement there.[1] The District did not respond to the email in writing, but District staff did speak with Center staff by telephone, requesting that it forward a contract and other documents.

On July 28, 2020, an internal District email documented a phone conversation between District staff and Center staff, in which the District learned that: W.M. was residing at the Center; A.T. was unable to care for W.M. because of his needs; W.M. had autism and several other severe mental health diagnoses; W.M. had a lengthy list of behaviors; W.M.'s sister, T.M., was already enrolled in the District; and the Center was interested in entering into an interstate compact with the District to

---

[1] The amended third-party complaint characterizes this as a "demand" for continued funding and for reimbursement of expenses incurred prior to the District learning of W.M.'s existence. A copy of the email attached as an exhibit to the plaintiff's complaint does not appear to bear that characterization out. (Compl. Ex. 1, Doc. 1-2, at 1.) But the content or tone of the communication is immaterial to our ruling on this motion in any event.

temporarily maintain W.M.'s placement there pending transition to a local residential facility.

On July 31, 2020, the Center emailed the District to follow up, indicating that the District had not responded to the Center's previous requests to enter into an agreement to continue W.M.'s placement at the Center, despite the Center having forwarded a proposed contract covering interim funding on July 29, 2020.[2] The email stated that the Center preferred for W.M. to have a continuity of placement and successful transition, but that, in the absence of any contact from the District regarding the contract or next steps, the Center would be discharging W.M. to his parent's care the next week. The Center also noted that it had continued to provide care to W.M. without any funding at all for ten days at that point. The District did not respond in writing.

On August 4, 2020, the Center once again emailed the District to request a response to their proposed contract, advising that it planned to discharge W.M. to his parent's care that week in the absence of a funding

---

[2] Although the Center's email stated that it had forwarded a proposed contract for interim funding, the District alleges in its amended third-party complaint that the Center never forwarded the requested contract. We note this fact dispute here in the margin only because it is entirely immaterial to our ruling on this motion.

arrangement. The Center requested that the District advise it as soon as possible if it had an alternative solution. The District did not respond in writing.

On August 10, 2020, the Center transported W.M. to A.T.'s home and discharged him into her care. The Center also contacted the Pennsylvania child protective services hotline to report A.T.'s expressed inability to care for W.M. with his special needs. The Center sent an email to the District providing a summary of the foregoing on August 12, 2020. The District did not respond in writing.

A.T. resided in a second-floor apartment that was effectively inaccessible to W.M. His discharge into her care resulted in a cascading series of events, including the family's displacement from that apartment to a hotel for several weeks, the exacerbation of a pre-existing depressive disorder suffered by T.M., and a complete deprivation of any special education services to W.M. during this period of displacement.[3]

## II.   DISCUSSION

The Center has moved to dismiss or to strike the amended third-

---

[3] The plaintiff's complaint alleges further denial of special education services until February 1, 2021, but this denial of services does not appear to be linked to the conduct of the Center in any way.

party complaint for lack of personal jurisdiction or, in the alternative, to dismiss it for failure to state a claim upon which relief can be granted.

## A. Personal Jurisdiction

The Center has moved to dismiss the amended third-party complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or alternatively to strike it on the same basis, pursuant to Rule 14(a)(4) of the Federal Rules of Civil Procedure. But it is beyond any reasonable dispute that this court may properly exercise personal jurisdiction over the Center.

It is undisputed that the Center maintains its principal place of business in Harris, New York. (*See* Doc. 37, at 11; Doc. 31 ¶ 4; *see also* Doc. 16 ¶ 4.) On October 26, 2021, shortly after the original third-party complaint was filed, the clerk issued a summons addressed to the Center at its Harris, New York, address. (Doc. 18.) On November 11, 2021, The Center waived formal service of process pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. (Doc. 21.) In waiving formal service of the summons, however, the Center did not waive any objection to personal jurisdiction. *See* Fed. R. Civ. P. 4(d)(5).

We take judicial notice that Harris, New York, is approximately 50

miles "as the crow flies" from the federal courthouse located in Scranton, Pennsylvania, from whence the summons was issued, and it is approximately 68 miles "as the crow flies" from the federal courthouse located in Wilkes-Barre, Pennsylvania, where the undersigned United States magistrate judge is stationed. Using either courthouse as our starting point, it is clear that the Center falls well within the proper exercise of personal jurisdiction by this court pursuant to the 100-mile "bulge rule" set forth in Rule 4(k)(1)(B) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(k)(1)(B); *see also Assocs. Commercial Corp. v. Mahoning Nat'l Bank*, 702 F. Supp. 104, 106 (W.D. Pa. 1988); *Realco Servs., Inc. v. Holt*, 479 F. Supp. 880, 885 (E.D. Pa. 1979); *Lee v. Ohio Cas. Ins. Co.*, 445 F. Supp. 189, 192–94 (D. Del. 1978). Under this rule, courts have held that "[t]he 'minimum contacts' requirement of due process need not be satisfied independently." *Realco Servs.*, 479 F. Supp. at 885. But even if it did, based on the nature and location of its operations in Harris, New York, the Center clearly has the minimum contacts necessary to satisfy due process in this case. *See Assocs. Commercial Corp.*, 702 F. Supp. at 106 (considering minimum contacts anywhere within the entire state where service was effected); *Lee*, 445 F.

Supp. at 193–94 (noting that courts have considered other standards, including measuring minimum contacts within the bulge area only, but finding that, regardless of standard, minimum contacts were clearly established where the party contesting personal jurisdiction transacted the business at issue within 100 miles of the federal courthouse that issued the summons).

Accordingly, the Center's motion to dismiss or to strike for lack of personal jurisdiction will be denied.

### B. Failure to State a Claim

In the alternative, the Center has moved to dismiss the amended third-party complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The District has articulated its third-party claims for damages against the Center in four separate counts. In Count I, the District asserts a claim under the IDEA, arising out of the Center's termination of special educational services to W.M. and its alleged "dumping" of W.M. at his parent's inaccessible home. In Count II, the District asserts a state-law negligence claim based on the same conduct by the Center. In Count

III, the District asserts a state common law indemnification claim against the Center, to the extent the District may be held vicariously liable for the same conduct by the Center. In Count IV, the District asserts associational discrimination and retaliation claims under the ADA, based on the same conduct by the Center.

### 1. IDEA Claim

In Count I, the District asserts a claim for damages under IDEA. But, under binding Third Circuit precedent, it is well established that the IDEA provides a private right of action *only* to disabled children and their parents, and that it does not provide a private right of action in favor of a local educational agency such as the District. *See Lawrence Twp. Bd. of Educ.*, 417 F.3d 368, 371–72 (3d Cir. 2005) (holding that a school district lacked prudential standing to assert a private right of action under the IDEA); *see also Jones v. Camden City Bd. of Educ.*, 499 Fed. App'x 127, 129 (3d Cir. 2012) (per curiam) (affirming district court finding that a substitute teacher lacked standing to litigate an IDEA claim); *Woods Servs., Inc. v. Hazleton Area Sch. Dist.*, Civil Action No. 3:15-CV-02464, 2016 WL 6216122, at *5–*6 (M.D. Pa. Oct. 25, 2016) (finding special education provider lacked standing to bring an IDEA claim); *Delaware*

*Valley Sch. Dist. v. P.W.*, No. 3:08cv1385, 2009 WL 1270220, at *3–*4 (M.D. Pa. May 5, 2009) (finding school district lacked standing to assert IDEA claim seeking to hold state educational agency responsible for its affirmative role in the denial of the student's right to a free appropriate public education). We find the District's attempts to distinguish this case from *Lawrence Township* and its progeny entirely unpersuasive. *See, e.g.*, *Delaware Valley*, 2009 WL 1270220, at *3 (rejecting substantively similar arguments).

Accordingly, the District's IDEA claim against the Center, set forth in Count I of the amended third-party complaint, will be dismissed for failure to state a claim upon which relief can be granted.

### 2. Negligence Claim

In Count II, the District asserts a state-law negligence claim. "To prevail in a negligence action, a plaintiff must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage." *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 61 (3d Cir. 2009).

"To satisfy the duty element, the defendant must owe a duty to the

specific plaintiff bringing the case." *Hall v. United States*, Civil Action No. 2:19-cv-05256-KSM, 2020 WL 3265146, at *2 (E.D. Pa. June 17, 2020); *see also Campo v. St. Luke's Hosp.*, 755 A.2d 20, 24 (Pa. Super. Ct. 2000) ("When considering the question of duty, it is necessary to determine whether a defendant is under any obligation for the benefit *of the particular plaintiff* and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence.") (internal quotation marks and ellipsis omitted) (emphasis added). "If the defendant does not owe a duty to the specific plaintiff, the negligence claim automatically fails." *Hall*, 2020 WL 3265146, at *2.

Here, the amended third-party complaint fails to plausibly allege any duty whatsoever owed to the District by the Center. In Count II, the District alleges in conclusory fashion that the Center "owed certain duties to the District." (Am. Third-Party Compl. ¶ 61.) In its opposition brief, the District directs our attention to the preceding count, alleging an IDEA claim. In that count, the District alleges that the Center had an implied contractual duty—presumably an implied duty of good faith and fair dealing—to continue to provide special educational services to W.M.

- 12 -

and not change his placement, to act in W.M.'s best interests, and to refrain from "dumping" him at his parent's inaccessible home. (*Id.* ¶¶ 52, 55.) The District alleges that this implied contractual duty arises from the Center's actions in accepting public funding from "the local educational agency." (*Id.* ¶ 55.) But "the local educational agency" referenced was Yonkers Public Schools, not the Scranton School District. There are simply no facts whatsoever alleged in the third-party complaint to suggest the existence of any agreement or contract between the Center and the District.

Moreover, the amended third-party complaint has failed to allege any actual physical injury or property damage suffered by the District as a consequence of the Center's purported breach of a duty it owed to the District. *See generally Adams v. Copper Beach Townhome Communities, L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003) ("The Economic Loss Doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage."); *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 951 (E.D. Pa. 1998) ("The economic loss doctrine has been applied to service contracts."). The

District alleges only that it was impaired in its ability to provide special educational services to W.M. and to properly transition him to a new local educational agency. But even if this non-pecuniary injury were cognizable as actual harm or loss, it was merely incidental to the actual losses or harm incurred by the plaintiffs as a result of the Center's alleged negligent conduct, and such indirect or derivative loss is insufficient to support a plausible negligence claim. *See In re Phar-Mor, Inc. Sec. Litig.*, 900 F. Supp. 777, 783 (W.D. Pa. 1994).

While the District's pleading clearly articulates duties owed to, and actual harm suffered by, W.M. and his family, which might support a plausible negligence claim against the Center if brought by the plaintiffs themselves, the District lacks standing to assert such a negligence claim on behalf of W.M. and his family, and it has failed to state a plausible negligence claim of its own.

Accordingly, the District's negligence claim against the Center, set forth in Count II of the amended third-party complaint, will be dismissed for failure to state a claim upon which relief can be granted.

### 3. Common Law Indemnification

In Count III, the District asserts a state common law

indemnification claim. The District contends that it is entitled to be indemnified to the extent it is held vicariously liable for the actions of the Center in "dumping" W.M.

"Under Pennsylvania law, indemnity is available only (1) where there is an express contract to indemnify, or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts." *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 448 (3d Cir. 2000) (internal quotation marks omitted). Here, the District does not allege an express contract with the Center, so some form of secondary or vicarious liability must be present. *Id.*

Common law indemnity "is a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Sirianni v. Nugent Bros., Inc.*, 506 A.2d 868, 871 (Pa. 1986). Only a party entirely free from fault can seek indemnification. *See Burbage v. Boiler Eng'g & Supply Co.*, 249 A.2d 563, 567 (Pa. 1969) ("The right to indemnity enures to a person who, *without active fault on his own part*, has been compelled by reason of some legal obligation to pay damages occasioned by the

negligence of another.") (emphasis added). If a party plays "*any part* in causing the injury," it cannot claim indemnity. *Sirianni*, 506 A.2d at 871 (emphasis in original).

Looking to the underlying complaint against the District, the plaintiffs here have not asserted any claims seeking to hold the District vicariously or secondarily liable for the conduct of the Center.[4] Rather, the plaintiffs have asserted § 1983 procedural and substantive due process claims, RA and ADA discrimination claims, and IDEA claims against the District based on *its own* intentional conduct or deliberate indifference with respect to the plaintiffs.[5] If the District is ultimately found liable to the plaintiffs on any of the claims pleaded in the currently operative complaint,[6] it will necessarily have been found liable on the

---

[4] As we have previously discussed, there is no allegation of any contractual relationship between the District and the Center. The District suggests in its briefs that the Center may have been its agent by operation of law, but its pleading fails to articulate any facts—and its briefs fail to point to any legal authority—in support of this contention.

[5] We note that there is also authority holding that state-law indemnification remedies are not available to shift liability for remedies imposed under § 1983, the ADA, or the RA. *See, e.g.*, *Feltenstein v. City Sch. Dist. of New Rochelle*, No. 14-CV-7494 (CS), 2015 WL 10097519, at *3–*4 (S.D.N.Y. Dec. 18, 2015) (ADA and RA); *Bank v. City of Philadelphia*, 991 F. Supp. 2d 523, 531–33 (E.D. Pa. 2014) (§ 1983).

[6] A factfinder's determination that the District is *vicariously or*
*(continued on next page)*

basis of *its own* wrongful conduct, and thus it cannot be entitled to common law indemnification under these circumstances.

Accordingly, the District's common law indemnification claim against the Center, set forth in Count III of the amended third-party complaint, will be dismissed for failure to state a claim upon which relief can be granted.

### 4. ADA Claims

In Count IV, the District asserts associational discrimination and retaliation claims under Title III of the ADA.

For relief, the District seeks an award of damages only; it does not request prospective injunctive relief. But it is well established that damages are not an available form of relief for a discrimination claim under Title III of the ADA. *See Doe v. Law Sch. Admission Council, Inc.*, 791 Fed. App'x 316, 319 (3d Cir. 2019) ("Doe does ask for damages, which (if available) would make her claims about past exams not moot. But

---

*secondarily liable* for conduct by the Center is a prerequisite to recovery on a common law indemnity claim. *See generally Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 507 A.2d 1, 26 (Pa. 1986) ("An implied contract to indemnify cannot come into existence until the [defendant] has been found liable to plaintiff and has discharged the obligation which arises out of that liability.").

damages are not available under Title III of the ADA.") (citing 42 U.S.C. §§ 2000a-3(a), 12188(a)(1)); *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 404 (M.D. Pa. 2019) ("The plaintiff is not entitled to monetary damages with respect to her claim under Title III of the ADA, since such relief is improper."); *Anderson v. Macy's Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) ("Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available.").

The anti-retaliation provision of the ADA, 42 U.S.C. § 12203, "forbids retaliation against anyone for opposing actions made unlawful under the ADA or for participating in a charge under the ADA. It also forbids coercion or intimidation against anyone exercising his or her rights under the statute." *Datto v. Harrison*, 664 F. Supp. 2d 472, 487 (E.D. Pa. 2009). But the enforcement provision of this section, § 12203(c), limits the remedies for retaliation with respect to public accommodations to those very same remedies available under Title III—i.e., prospective injunctive relief only. *G. v. Fay Sch.*, 931 F.3d 1, 10–11 (1st Cir. 2019); *see also Datto*, 664 F. Supp. 2d at 487 ("[A] plaintiff bringing a retaliation claim involving public accommodations will have the remedies of Title III

of the ADA, incorporating the remedies of Title II of the Civil Rights Act."); *id.* at 492 (holding that § 12203 permits only injunctive relief with respect to retaliation claims involving public accommodations) (citing 42 U.S.C. § 2000a-3(a) (remedial provision of Title II of the Civil Rights Act)).

Accordingly, the District's ADA associational discrimination and retaliation claims against the Center, set forth in Count IV of the amended third-party complaint, will be dismissed for failure to state a claim upon which relief can be granted.

### 5. *Leave to Amend*

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, based on the facts alleged in the amended third-party complaint, it is clear that amendment would be futile. Therefore, the District's amended third-party complaint will be dismissed *without* leave

to amend.

## III.  CONCLUSION

For the foregoing reasons, the motion to dismiss by the third-party defendant, the Center for Discovery, will be granted and the amended third-party complaint filed by the defendant, Scranton School District, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

An appropriate order follows.

Dated: September 22, 2022            ***s/Joseph F. Saporito, Jr.***
                                     JOSEPH F. SAPORITO, JR.
                                     United States Magistrate Judge